UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
CELESTINO PACHECO LOPEZ,

                       Plaintiff,

            - against -

MOHAMMED MOHAMMED, EL-
RAWSHEH CAFE & RESTAURANT INC.,
EL-RAWSHEH CAFE INC., EL-RAWSHEH
CUISINE INC., KIRSTEN GOLDBERG,

                   Defendants.
-------------------------------------------------------x

**MEMORANDUM & ORDER**
14-CV-4443 (PKC) (MDG)

PAMELA K. CHEN, United States District Judge:

On November 26, 2014, in this Fair Labor Standards Act ("FLSA") and New York Labor

Law ("NYLL") case, a default judgment was entered in the amount of $59,440.43, jointly and

severally, against Defendants Mohamed Mohamed,[1] El-Rawsheh Cafe & Restaurant Inc., El-

Rawsheh Cafe Inc., El-Rawsheh Cuisine Inc., and Kirsten Goldberg. (Dkt. 19.)  On December 22,

2014, Defendant Mohamed filed a *pro se* notice of appeal as to the default judgment but did not

pay the filing fee. (Dkts. 20, 30.)  Then, two months later, on February 20, 2015, all Defendants,[2]

except Kirsten Goldberg, appeared and moved to vacate the judgment; Plaintiff opposed. (Dkts.

---

[1] In the Complaint, Plaintiff spelled Defendant Mohamed's name "Mohammed Mohammed", *i.e.*, with two "m"s in the middle of both his first and last names.  On September 21, 2016, Mohamed submitted an affidavit under the name "Mohamed Mohamed", with only one "m" in the middle, stating that Plaintiff had misspelled his name.  (*See* Dkt. 34-1, September 21, 2016 Affidavit of Mohamed at 2.)  On earlier dates, however, Mohamed had submitted two other sworn affidavits under the name "Mohammed Mohammed."  (*See* Dkts. 22-3, 28.)  Nevertheless, the Court will refer to this Defendant as "Mohamed Mohamed".

[2] For the sake of brevity, the Court will refer to Defendants Mohamed, El-Rawsheh Cafe & Restaurant Inc., El-Rawsheh Cafe Inc., El-Rawsheh Cuisine Inc. as "Defendants," even though Defendant Goldberg still has not made an appearance and does not join the other Defendants in their motion to vacate the default judgment.

21–29.)  This Court referred the motion to the Honorable Marilyn D. Go for an inquest.  (February 23, 2015 Order.)  After holding a traverse hearing on September 15, 2016, regarding service on the individual Defendants Mohamed and Goldberg, Judge Go issued a Report and Recommendation ("R&R"), dated March 17, 2017, recommending that the Court deny Defendants' motion to vacate the default judgment.  (Dkts. 33, 37.)  Defendants timely objected to the R&R, to which Plaintiff did not respond.  (Dkt. 39.)  On April 28, 2017, Defendants sought an automatic stay of this action, pursuant to Section 362 of the Bankruptcy Court, noting that El-Rawsheh Cuisine Inc., one of the corporate defendants, had filed a Chapter 7 Petition in the United States Bankruptcy Court, Eastern District of New York, on April 26, 2017.  (Dkt. 41.)  For reasons explained in a May 22, 2017 Order, the Court stayed the case only as to Defendant El-Rawsheh Cuisine Inc.  (*See* May 22, 2017 Order.)

For the reasons set forth below, Defendants' objections are overruled, and the Court adopts Judge Go's R&R, with the exception of the finding that vacatur is unlikely to prejudice Plaintiff, and denies Defendants' motion to vacate the default judgment.

## BACKGROUND

The Court provides a summary of facts relevant only to Defendants' motion to set aside the default judgment.[3]

Plaintiff Celestino Pacheco Lopez brought this action against his former employer El-Rawsheh Cafe & Restaurant Inc., El-Rawsheh Cafe Inc., El-Rawsheh Cuisine Inc., d/b/a/ El-Rawsheh (collectively, "El-Rawsheh" or the "Corporate Defendants"), the named owner and manager (Mohamed), and another manager (Goldberg), to recover, *inter alia*, unpaid minimum

---

[3] A more thorough discussion of the facts is available in Judge Go's R&R and this Court's November 24, 2014 order granting a default judgment against Defendants.  (*See* Dkts. 18, 37.)

wages, overtime wages, and statutory penalties under the FLSA and NYLL. (*See* Dkt. 1, Complaint ("Compl.").)

El-Rawsheh is a restaurant and hookah bar. (Compl. ¶¶ 1, 9; 10/30/14 Hr'g.) Plaintiff worked there as a dishwasher and cleaner from mid-June 2013 through June 21, 2014. (Compl. ¶ 24; 10/30/14 Hr'g.) Plaintiff alleged that he worked every day from 4 p.m. until 4 a.m., without breaks, for seven days a week. (Compl. ¶¶ 12, 24.) For his first week of work, El-Rawsheh paid Plaintiff $350. (10/30/14 Hr'g.) Subsequently, Plaintiff was paid a flat rate of $420 a week for 84 hours of work, resulting in an effective rate of $5.00 per hour. (Compl. ¶ 24.) Plaintiff quit on June 21, 2014. (10/30/14 Hr'g.) He did not receive payment for his last week of work. (*Id.*)

## STANDARD OF REVIEW

When reviewing a report and recommendation by a magistrate judge, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). The Court makes a "*de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3) ("The district judge must determine *de novo* any part of the magistrate judge's disposition that has been *properly* objected to." (emphasis added)). However, "[t]o accept the report and recommendation of a magistrate judge on a dispositive matter to which no timely objection has been made, the district court need only be satisfied that there is no clear error on the face of the record." *Bailey v. Wells Fargo Bank, N.A.*, 15-CV-3249, 2016 WL 3661279, at *1 (E.D.N.Y. July 5, 2016). Similarly, "[g]eneral or conclusory objections, or objections which merely recite the same arguments presented to the magistrate judge, are reviewed for clear error." *O'Diah v. Mawhir*, No. 08-CV-322, 2011 WL 933846, at *1 (S.D.N.Y. March 16, 2011) (citing *Farid v. Bouey*, 554 F. Supp. 2d 301, 306 n.2 (N.D.N.Y. 2008) and *Frankel v. N.Y.C.*, 06-CV-5450, 2009 WL 465645, at *2 (S.D.N.Y.

Feb. 25, 2009)).  When the magistrate judge has conducted a hearing, "[the] district judge is not required to hear or rehear any witness, and [the objecting party has] no right to present further testimony when it offered no justification for not offering the testimony at the hearing before the magistrate." *Telfaire v. Le Pain Quotidien*, No 16-CV-5424, 2017 WL 1405754, at *1 (S.D.N.Y. Apr. 18, 2017) (quoting *Pan Am. World Airways v. Int'l Bhd. of Teamsters*, 894 F.2d 36, 40 n.3 (2d Cir. 1990)).  "In this district and circuit, it is established law that a district judge will not consider new arguments raised in objections to a magistrate judge's report and recommendation that could have been raised before the magistrate but were not." *Illis v. Artus*, 06-CV-3077, 2009 WL 2730870, at *1 (E.D.N.Y. Aug. 28, 2009) (citations and quotations omitted) (collecting cases).

## DISCUSSION

"Federal Rule of Civil Procedure ['Rule'] 60(b) governs motions for relief from a final judgment . . . and provides six independent grounds for relief." *Burda Media, Inc. v. Viertel*, 417 F.3d 292, 298 (2d Cir. 2005).  Under Rule 60(b), a district court may vacate a judgment for any of the following reasons:

> (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence . . . ; (3) fraud . . . , misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied [or] released . . . or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

In their motion to vacate, Defendants asserted that they were moving pursuant to subsections (b)(1), (3), (4), and (6) of Rule 60.  (Dkt. 22-9 at 3.)  Judge Go concluded that none of the Rule 60(b) subsections are grounds for vacating the judgment in this case.  (*See* R&R generally.)[4]  Defendants now object to Judge Go's conclusion that judgment should not be vacated

---

[4] As previously noted, Rule 60(b)(6) provides a court with the authority to relieve a party from a final judgment for "any other reason that justifies relief."  Although the R&R cites to Rule 60(b)(6) in discussing Defendants' argument that the default judgment should be vacated because

under Rules 60(b)(1), (3), or (4).  The Court has conducted a *de novo* review of the record and addresses Defendants' specific objections in turn.

As an initial matter, the Court notes that although there is a "strong preference for resolving disputes on the merits," *N.Y. v. Green,* 420 F.3d 99, 104 (2d Cir. 2005) (internal quotations omitted), "a decision whether to set aside a default [judgment] is a decision left to the sound discretion of the district court because 'it is in the best position to assess the individual circumstances of a given case and to evaluate the credibility and good faith of the parties,'" *McLean v. Wayside Outreach Dev. Inc.*, 624 F. App'x 44, 45 (2d Cir. 2015) (quoting *Enron Oil Corp. v. Diakuhara,* 10 F.3d 90, 95 (2d Cir. 1993)).

## I.     Rule 60(b)(4)

### A.     Validity of a Judgment

Rule 60(b)(4) provides: "On motion and just terms, the court may relieve a party or its legal representative from a final judgment . . . [if] the judgment is void." Fed. R. Civ. P. 60(b)(4).  "A default judgment is 'void' if it is rendered by a court that lacks jurisdiction over the parties." *City of N.Y. v. Mickalis Pawn Shop, LLC,* 645 F.3d 114, 138 (2d Cir. 2011).  "For a federal court to exercise personal jurisdiction over a defendant, 'the plaintiff's service of process upon the defendant must have been procedurally proper.'" *Westchase Residential Assets II, LLC v. Gupta*, No. 14-CV-1435, 2016 WL 3688437, at *2 (E.D.N.Y. July 7, 2016) (quoting *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012)); *see also Sartor v. Toussaint*, 70 F. App'x 11, 13 (2d Cir. 2003) ("A judgment is void for lack of personal jurisdiction over the

---

the Court lacked personal jurisdiction over Defendants due to defective service (*see* R&R at 11), the Court infers that this reference to Rule 60(b)(6) is a typographical error and that the R&R, in fact, is referring to Rule 60(b)(4), which permits vacating a judgment that is void, *e.g.*, a judgment obtained against defendants over whom the Court has no personal jurisdiction.  Indeed, the R&R separately addresses Defendants' Rule 60(b)(6) argument later in the decision.  (*See* R&R at 16.)

defendant where service of process was not properly effected.").  "[W]hen a judgment entered against the defaulting party is void, the Court has no discretion and is compelled to grant the motion for the reason that a void judgment cannot be enforced."  *Sartor*, 70 F. App'x at 13 (quoting *Wrobleski v. Morrissette,* No. 96-CV-0182, 2000 WL 129184, at *1 (W.D.N.Y. Jan. 27, 2000)).

### B.      Service of the Complaint

Under Rule 4(e), a plaintiff may serve an individual by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made" or by "leaving a copy of [the summons and complaint] at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there."  Fed. R. Civ. P. 4(e)(1), (2)(B).  Thus, the Court looks to New York Civil Practice Law and Rules ("C.P.L.R.") which enumerates several ways by which proper service can be effected.  Under New York C.P.L.R. Section 308, in addition to personal service, a plaintiff can serve an individual by a combination of delivery and mail.  Section 308(2) provides that an individual may be served "by delivering the summons within the state to a person of suitable age and discretion at the [person's] actual place of business . . . and by either mailing the summons to the person to be served at his or her last known residence . . . or [ ] actual place of business . . . ." N.Y. C.P.L.R. § 308(2).  "New York courts have construed 'actual place of business' to include (1) a place where the defendant regularly transacts business, or (2) an establishment that the defendant owns or operates, where there is a 'clear identification of the work performed by [him] with that place of business.'"  *Velez v. Vassallo*, 203 F. Supp. 2d 312, 325 (S.D.N.Y. 2002) (quoting *King v. Galluzzo Equip. & Excavating, Inc.*, No. 00-CV-6247, 2001 WL 1402996, at *4 (E.D.N.Y. Nov. 8, 2001)).

"'Normally, a plaintiff has the burden of proving personal jurisdiction in a case where a defendant appears and contests such jurisdiction.'  Where a defendant has actual notice of a lawsuit

before a default judgment is entered, but does not challenge jurisdiction until after a default is entered, the burden to prove lack of jurisdiction shifts to defendant." *Middleton v. Green Cycle Hous., LLC*, 689 F. App'x 12, 13 (2d Cir. 2017) (quoting *"R" Best Produce, Inc. v. DiSapio*, 540 F.3d 115, 126 (2d Cir. 2008)); *see also Burda Media, Inc.*, 417 F.3d at 299 ("[O]n a motion to vacate a default judgment based on improper service of process where the defaulting defendant had actual notice of the original proceeding but delayed in bringing the motion, the defendant bears the burden of proof to establish that the purported service did not occur."). In New York, a process server's affidavit of service establishes a presumption of service, but "[a] defendant's sworn denial of receipt of service . . . rebuts [that] presumption . . . and necessitates an evidentiary hearing." *Old Republic Ins. Co. v. Pac. Fin. Servs. of Am., Inc.*, 301 F.3d 54, 57 (2d Cir. 2002); *see also Weifang Xinli Plastic Prod. Co. v. JBM Trading Inc.*, 553 F. App'x 42, 45  (2d Cir. 2014). "But no hearing is required where the defendant fails to swear to specific facts to rebut the statements in the process server's affidavits." *Weifang Xinli Plastic Prod. Co.*, 553 F. App'x at 45 (quoting *Old Republic Ins. Co.*, 301 F.3d at 57–58). In other words, a conclusory sworn denial of receipt of service alone cannot rebut the presumption of service. *See id.* Furthermore, "courts may discredit such denials of service when there is 'ample evidence from which [to] conclude that [the defendant's] statements [denying receipt of service] lack[] credibility.'" *De Curtis v. Ferrandina*, 529 F. App'x 85, 86 (2d Cir. 2013) (alterations in original) (quoting *Old Republic Ins. Co.*, 301 F.3d at 58).

### C.    Defendants' Objections

Based on the traverse hearing, Judge Go found that Mohamed was properly served at his place of business, and therefore recommended that Defendants' motion to vacate the default judgment on the basis of Rule 60(b)(4) should be denied.  (R&R at 12–15.)  Only Mohamed contested Plaintiff's assertion of proper service; the Corporate Defendants conceded that they had

been served properly.[5]  (*See* Dkt. 36, Traverse Hr'g Tr. ("Tr.") at 8 (Defendants conceding that the Plaintiff properly served the Corporate Defendants through the Secretary of State); *see also* Dkt. 25-2, Ex. B, Affidavit of Service by Secretary of State as to El-Rawsheh Cafe & Restaurant Inc, El-Rawsheh Cuisine Inc., and El-Rawsheh Cafe Inc.)

In his motion to vacate, Mohamed claimed that the Court never obtained personal jurisdiction over him because he was never served with the Summons and Complaint.[6]  Resolution of this claim largely depends on the credibility of Rose Lawrence, the process server and legal secretary at the office of Jeanne Mirer, Plaintiff's attorney; Ihab Ilbana, the employee at Mohamed's workplace to whom Lawrence claims to have served the Summons and Complaint; and Defendant Mohamed.  Judge Go, after observing the witnesses' demeanor and hearing their testimony, found Lawrence's testimony to be credible.  (R&R at 13.)  Ultimately, Judge Go concluded that Defendants had not met their burden of demonstrating insufficient service, based, in part, on her finding that Mohamed's testimony lacked credibility for multiple reasons.  Specifically, Judge Go noted that (1) "[t]here would have been no reason for a person claiming to be 'Mohammed Mohammed' to call [the office of Plaintiff's attorney] in August 2014 had he not received the summons" (*id.* at 13); (2) it was unlikely that Mohamed did not have actual notice of the action months before filing his motion to vacate default judgment because, as George Fanous, the president of El-Rawsheh testified, Fanous relied on Mohamed for reading and writing material

---

[5] However, as discussed *infra*, the Corporate Defendants, along with Mohamed, seek to vacate the default judgment on the basis of other subsections of Rule 60(b).

[6] Mohamed does not object to Judge Go's specific finding that El-Rawsheh Cafe was Mohamed's "actual place of business," and that Ilbana, is a "person of suitable age and discretion." Rather, he denies that the Summons and Complaint were left with Ilbana, that Ilbana gave the Summons and Complaint to Mohamed, and that Mohamed ever received the copy of Summons and Complaint mailed to El-Rawsheh.

in English, and thus Mohamed was likely to have seen and read the Summons and Complaint El-Rawsheh received from the Secretary of State; and (3) Mohamed's failure to pay the filing fee after he filed a *pro se* notice of appeal indicates that he had delayed addressing the default judgment, in spite of having knowledge of it.  (*See* R&R at 13–14.)

Mohamed argues that such findings of fact by Judge Go were in error, citing *Green*, 420 F.3d at 104, which states that "all doubts must be resolved in favor of the party seeking relief from the judgment . . . ."  Not only does Mohamed object to Judge Go's finding that Mohamed was properly served at his place of business, he also objects to certain findings relating to her conclusion that Mohamed had actual knowledge of the lawsuit.  Specifically, Mohamed asserts that had he left a message for Plaintiff's attorney, it could have been in response to an initiating phone call, rather than in response to receiving copies of the Summons and Complaint via proper service.  (Dkt. 39 at 13.)  He also contends that Judge Go failed to resolve doubt in favor of the party seeking vacatur by concluding that had Fanous received the service from the New York Secretary of State, he would have asked Mohamed for assistance in reading the service.  (*Id.* at 14.)  Finally, Mohamed objects to Judge Go's finding that Defendants committed intentional delay by not paying the fee for Mohamed's *pro se* appeal of the default judgment.  (*Id.* at 14.)

Here, the record includes ample evidence to support Judge Go's determination that Plaintiff properly served Mohamed.  The affidavit of service notarized on August 4, 2014, indicates that on July 29, 2014, Lawrence left copies of the Summons and Complaint with Ilbana at 2548 Steinway Street in Astoria, New York, which was the address of El-Rawsheh, *i.e.*, Mohamed's place of business, and also mailed a second copy via USPS First Class mail to the same address; the affidavit of service also indicates that the "deliver and mail" process was completed within twenty

days of each other, as required under N.Y. C.P.L.R. § 308(2).[7]  (*See* Dkt. 25-1, Ex. A, Affidavits

of Service to Mohamed and Goldberg.)  In her affidavit, Lawrence describes Ilbana and the process

by which she gave him the Summons and Complaint.  (*See* Dkt. 25, Affidavit of Rose Lawrence

("Lawrence Aff."), ¶ 5–8.)  In her testimony at the hearing before Judge Go[8], Lawrence stated,

consistent with her previous affidavits, that she went to El-Rawsheh, asked to speak to Mohamed,

and was told by Ilbana that Mohamed was not there, but might return later (Tr. 10–11); that

Lawrence gave Ilbana envelopes containing the Summons and Complaint, which Ilbana took (Tr.

12); and that Lawrence also mailed them to the same address because she was unable to personally

serve Mohamed (Tr. 12–13).  Thus, Plaintiff's service on Mohamed was proper and sufficient

under New York law.  *See* N.Y. C.P.L.R. § 308.

In addition, Lawrence testified at the hearing that Mohamed had called the offices of

Plaintiff's attorney, Jeanne Mirer, on August 15, 2014, and asked that Mirer call him back at (718)

267-6222.  (Tr. at 13–14.)  Plaintiff also introduced a phone memo pad from August 2014 and

---

[7] Although the affidavit of service does not specify the date on which the Summons and Complaint were mailed to El-Rawsheh, the Court infers that the "deliver and mail" process occurred within twenty days of each other because the affidavit of service was notarized on August 4, 2014.  (*See* Dkt. 25-1, Ex. A, Affidavits of Service to Mohamed and Goldberg.)

[8] The Court notes that Mohamed was not even entitled to a hearing on the service issue. By merely providing conclusory affidavits denying service in his motion to vacate, Mohamed failed to rebut the presumption of proper service; therefore, an evidentiary hearing was not necessary.  *See DeCurtis v. Upward Bound Int'l, Inc.*, No. 09-CV-5378, 2012 WL 4561127, at *4 (S.D.N.Y. Sept. 27, 2012) ("'[N]o evidentiary hearing is required where the defendant fails to swear to specific facts to rebut the statement in the process server's affidavits.'" (quoting *Old Republic Ins. Co.*, 301 F.3d at 58)), *aff'd*, 529 F. App'x 85; *Cablevision Sys. N.Y.C. Corp. v. Okolo*, 197 F. App'x 61, 62 (2d Cir. 2006) (finding that defendant's general denial of service and insignificant disagreements with process server's physical description of recipient were insufficient to necessitate an evidentiary hearing); (*see also* Dkt. 22-2, Affidavit of George Fanous ("Fanous Aff."), ¶ 4; Dkt. 22-3, Affidavit of Mohamed Mohamed ("Mohamed Aff."), ¶ 4; Affidavit of Ihab Ilbana ("Ilbana Aff."), ¶¶ 2–3.)  Nonetheless, Judge Go conducted a hearing at which she received live testimony and other evidence.

September 2014 from Mirer's office, which bore a notation about Plaintiff having called the office and asking for a return call at (718) 267-6222.  (*Id.*)

While the Court recognizes that the Second Circuit has expressed a "strong 'preference for resolving disputes on the merits,'" *Green*, 420 F.3d at 104, the Court still has the discretion to preserve a default judgment based on the Court's credibility determinations as to the parties' differing accounts regarding service.  *See De Curtis*, 529 F. App'x at 86 (endorsing the district court's credibility determination and holding that "[t]he district court was correct in rejecting [defendant's] motion to vacate on these grounds"); *Old Republic*, 301 F.3d at 59 ("In light of the contradictory statements and incredible defenses presented by [the defendant], we find that the district court also did not abuse its discretion in crediting [the process server's] contemporaneous account of service . . . ."); *Weifang Xinli Plastic Prod. v. JBM Trading Inc.*, No. 11-CV-2710, 2014 WL 4244258, at *6 (E.D.N.Y. Aug. 26, 2014) (crediting testimony from witness that defendant had initiated a phone conversation with him about the lawsuit, rejecting defendant's assertion that witness's account was "inconsistent and self-serving," and thus finding that defendant had actual notice of the lawsuit), *aff'd*, 583 F. App'x 24 (2d Cir. 2014); *BMG Music Pub. Ltd. v. Croma Music Co.*, No. 01-CV-1941, 2003 WL 22383374, at *2 (S.D.N.Y. Oct. 16, 2003) (overruling defendants' objection to magistrate judge's recommendation that her motion to vacate the default judgment for failure to execute adequate service be denied where a process server's testimony as to service was credible and consistent with other sworn affidavits).

Furthermore, as previously stated, the Second Circuit has explained that "courts may discredit [ ] denials of service when there is 'ample evidence from which [to] conclude that [the defendant's] statements lacked credibility.'"  *De Curtis*, 529 F. App'x at 86 (alterations in original) (quoting *Old Republic Ins. Co.*, 301 F.3d at 58).  Here, based on its *de novo* review of the record,

11

the Court agrees with Judge Go's credibility determinations as to the testimony of Lawrence and Mohamed. Lawrence's testimony about hand-delivering and mailing copies of the Summons and Complaint to El-Rawsheh on July 29, 2014, was consistent with her affidavit of service and the additional affidavit she submitted in connection with Defendants' motion to vacate. (*Compare* Tr. 9–21, *with* Dkt. 25, Lawrence Aff. and Dkt. 25-1, Ex. A, Affidavits of Service to Mohamed and Goldberg.) Moreover, the affidavits of service identify an employee at El-Rawsheh, Ilbana, as the person who received the Summons and Complaint from Lawrence, and Defendants do not deny that Ilbana worked at El-Rawsheh. (*See* Tr. 30 (Mohamed's testimony that Ilbana "was [ ] working as a waiter [at El-Rawsheh]").) Although Ilbana stated in his affidavit that no one ever came to El-Rawsheh with copies of the Summons and Complaint on July 29, 2014, and that, had he received such documents, he would have given them to Mohamed or Fanous (Dkt. 22-4, Affidavit of Ihab Ilbana ("Ilbana Aff."), ¶¶ 1–3), Ilbana did not testify on Defendants' behalf at the hearing before Judge Go. Furthermore, the credibility of Ilbana's statements is undercut by the fact that Lawrence identified Ilbana, including his first name, in the service affidavit—information that Lawrence could only have gotten if she had, as she testified and attested to in her affidavits, gone to El-Rawsheh, met Ilbana, and given him the Summons and Complaint.[9]

Other evidence in the record also undermines Mohamed's claim that he did not receive proper service. As previously mentioned, Plaintiff provided evidence at the hearing that his attorney, Mirer, received a message in August 2014 from a caller who identified himself as "Mohamed Mohamed" and asked Mirer to return his call at (718) 267-6222, which Mohamed has admitted is the phone number for El-Rawsheh. (*See* Dkt. 24-3, Ex. 3 (Copy of Message Notepad);

---

[9] Indeed, the fact that Defendants have submitted a sworn affidavit that appears to contain perjured information undermines Mohamed's and the other Defendants' credibility generally.

*see also* Tr. at 13–14, 29.)  Moreover, while Mohamed and Fanous both testified at the hearing that Mohamed received mail at El-Rawsheh (Tr. 27, 44), they now deny receiving six of the seven mailings of documents related to the instant case[10] and also deny any knowledge of service by the Secretary of State on the corporate Defendants.[11]  (*See* Tr. 41 (Mohamed's testimony that he did not recall receiving anything from the Secretary of State regarding the lawsuit.)  Mohamed and Fanous's claims (and sworn testimony) that, of the seven mailings, they only received the default judgment—especially without any explanation as to how the other six mailings would not have reached them—strains credulity.

In sum, based on a *de novo* review of the record, the Court finds that Defendants' claims that they never received copies of the Summons and Complaint and that they had no notice of the lawsuit are not credible.[12]  The Court further finds that Plaintiff properly served Defendant Mohamed and all of the other Defendants.[13]  Accordingly, the Court denies Defendants' objections

---

[10] In connection with Defendants' motion to vacate, Plaintiff provided evidence that a letter, advising Defendants of Plaintiff's intent to file suit, was sent by Plaintiff's attorney to Defendants on July 5, 2014 (Dkt. 24-1, Ex. 1), and that two separate copies of the Summons and Complaint (Dkt. 25-1, Ex. A, Affidavits of Service to Mohamed and Goldberg), in addition to three separate copies of the Motion for Default Judgment and Affirmation were mailed to Defendants (Dkt. 24-4, Ex. 4).  Although Plaintiff has not provided evidence of mailing the default judgment to Defendants, the Court infers that a copy of the judgment was also mailed to Defendants given that Defendants filed a motion to vacate the judgment.

[11] In connection with Defendants' motion to vacate, Plaintiff has also submitted copies of affidavits of service by the Secretary of State.  (Dkt. 25-2, Ex. B).

[12] In reaching this conclusion, the Court does not rely on Judge Go's finding that Fanous would have asked Mohamed for help with any legal documents mailed by the Secretary of State, and does not address Defendants' objections to that ruling.

[13] "[I]n most cases where courts have shifted the burden to the defendant to disprove service, . . . it was conceded or uncontroverted that defendant had knowledge of the underlying suit before the entry of judgment."  *Khaldei v. Kaspiev*, No. 10-CV-8328, 2014 WL 2575774, at *7 (S.D.N.Y. June 9, 2014) (collecting cases).  Here, Defendants do not concede that they had knowledge of the lawsuit against them.  Only Fanous has stated that he may have talked to some attorney, whom he could not identify, about the lawsuit (Tr. 39), but then provided vague and

to the R&R on this issue and Defendants' motion to vacate the default judgment for failure to provide adequate service pursuant to Rule 60(b)(4).

## II.     Rule 60(b)(3)

In objecting to Judge Go's recommendation that this Court should not set aside the default judgment pursuant to Rule 60(b)(3), Defendants rehash the arguments rejected by Judge Go. Specifically, they assert that Plaintiff's claim is based on fraud because he misrepresented his duties and dates of employment.  In support of their assertions that Plaintiff worked for them for only two weeks and was fully paid, and that therefore the default judgment was obtained by fraud, Defendants point to the fact that Plaintiff has alleged that a "Kirsten Goldberg" worked at El-Rawsheh and named her a defendant, when no one by that name ever worked at El-Rawsheh.

Under Rule 60(b)(3), courts may vacate a final judgment where an adverse party used fraud, misrepresentation, or misconduct in obtaining the judgment.  Fed. R. Civ. P. 60(b)(3); *see also Entral Grp. Int'l, LLC v. 7 Day Cafe & Bar*, 298 F. App'x 43, 44 (2d Cir. 2008) (quoting *State St. Bank & Tr. Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 176 (2d Cir. 2004)). "'[A] Rule 60(b)(3) motion cannot be granted absent clear and convincing evidence of material misrepresentation,' and to prevail 'a movant must show that the conduct complained of prevented the moving party from fully and fairly presenting his case.'"  *Entral Grp. Int'l, LLC*, 298 F. App'x at 44 (first quoting *Fleming v. N.Y. Univ.*, 865 F.2d 478, 484 (2d Cir. 1989); and then quoting *State St. Bank & Tr. Co.*, 374 F.3d at 176); *see also Koch v. Pechota*, 632 F. App'x 24, 26 (2d Cir. 2016)

---

inconsistent testimony that the first time he learned of the lawsuit was when he "received later document [sic]" (Tr. 38), presumably the default judgment, as he also testified that he never received anything from the Secretary of State (Tr. 41).  Thus, the Court does not find that the burden to disprove service shifted to Defendants.  Rather, the Court's finding is that Plaintiff has met his burden of demonstrating that service of process was validly effected.

(quoting *Fleming*, 865 F.2d at 484); *Speaks v. Donato*, 214 F.R.D. 69, 77 (D. Conn. 2003) (noting that "[t]he moving party bears a heavy burden under Fed. R. Civ. P. 60(b)(3)").

Here, Defendants have not provided "clear and convincing evidence" of fraud on the part of Plaintiff.  "In fact, they have not provided ANY evidence that [P]laintiff[] engaged in fraud, misrepresentation or misconduct in the procurement of the default judgment."  *Ptak Bros. Jewelry, Inc. v. Ptak & Ptak, LLC*, No. 06-CV-13732, 2011 WL 253424, at *4 (S.D.N.Y. Jan. 25, 2011) (emphasis in original).  Even if Plaintiff incorrectly alleged that a "Kirsten Goldberg" worked at El-Rawsheh, that alone is not clear and convincing evidence of fraud.

With respect to Defendants' assertion that Plaintiff has fraudulently alleged that he worked at El-Rawsheh for one year, as the R&R points out, Defendants and Fanous "have not come forward with time records to support their general allegations, even though they are required under section 211(c) of the [Fair Labor Standards Act] and appurtenant regulations to keep such records."  (R&R at 18.)  With nothing more than Fanous's affidavit stating that Plaintiff only worked for two weeks at El-Rawsheh and was paid in full, Defendants have not met their heavy burden of demonstrating fraud, as required under Rule 60(b)(3).

Accordingly, the Court denies Defendants' objections to the R&R's findings on this issue, and concludes that the default judgment should not be set aside pursuant to Rule 60(b)(3).

## III.     Rule 60(b)(1) and the Three *McNulty* Factors

In recommending that the default judgment not be vacated pursuant to Rule 60(b)(1),[14] Judge Go properly considered the three *McNulty* factors.  *See S.E.C. v. McNulty*, 137 F.3d 732, 738 (2d Cir. 1998).  The Second Circuit discussed these factors in *DeCurtis*:

---

[14] Although the R&R discusses the *McNulty* factors in the context of whether the judgment should be vacated under Rule 60(b), the Court infers that this discussion specifically pertained to whether the judgment should be vacated specifically under Rule 60(b)(1).

"When a district court decides a motion to vacate a default judgment pursuant to the provisions of Rule 60(b)[1], the court's determination must be guided by three principal factors: (1) whether the default was willful, (2) whether the defendant demonstrates the existence of a meritorious defense, and (3) whether, and to what extent, vacating the default will cause the nondefaulting party prejudice." *State St. Bank & Trust Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 166–67 (2d Cir. 2004) (internal quotation marks omitted). Of these factors, willfulness carries the most weight. Though each factor is to be considered, a "default should not be set aside when it is found to be willful." *Action S.A. v. Marc Rich & Co., Inc.*, 951 F.2d 504, 507 (2d Cir. 1991).

*De Curtis*, 529 F. App'x at 86 (alteration in original).

Defendants object to Judge Go's findings that Defendants' default was willful and that Defendants do not have a meritorious defense. For the reasons discussed below, the Court finds that all three *McNulty* factors weigh in favor of denying Defendants' motion to vacate: (1) Defendants' default was willful; (2) Defendants have not sufficiently demonstrated that they have a meritorious defense; and (3) Plaintiff is likely to be prejudiced if the entry of default and/or default judgment is vacated.

### A.    Willful Default

In their objection, Defendants contend that "the record does not support the finding that any default by Mohamed was 'willful' . . . ." (Dkt. 39 at 3.) The Court disagrees.

"A default is willful when the conduct is 'more than merely negligent or careless,' but is instead 'egregious and not satisfactorily explained.'" *Jaramillo v. Vega*, 675 F. App'x 76, 76–77 (2d Cir. 2017) (quoting *Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const., LLC*, 779 F.3d 182, 186 (2d Cir. 2015)). "In general, a defendant's failure to answer the complaint and respond to a motion for default judgment demonstrates willfulness." *Murphy v. Snyder*, No. 10-CV-1513, 2013 WL 934603, at *6 (E.D.N.Y. Mar. 8,

2013) (citing *McNulty*, 137 F.3d at 738–39), *report and recommendation adopted*, 2013 WL 1335757 (E.D.N.Y. Mar. 29, 2013).

Plaintiff has filed copies of multiple notices that were sent to Mohamed's place of work, El-Rawsheh, regarding the instant lawsuit; two of them were specifically addressed to Mohamed. (*See supra* fn. 10; Dkt. 15-5, Affirmation of Service by Jeanne Mirer and Certificates of Mailing). In addition, Plaintiff has provided credible evidence that Mirer sent Mohamed a letter on July 5, 2014, regarding Plaintiff's intent to file a lawsuit for unpaid overtime wages (Dkt 24-1, Ex. 1, July 2, 2014 letter from Mirer to Mohamed regarding Plaintiff's legal claims; Dkt. 24-2, Ex. 2, Copy of USPS tracking result showing delivery of letter on July 5, 2014), and that Mohamed left a message for Plaintiff's counsel on August 15, 2014—less than a month after Plaintiff commenced this lawsuit (*see* Dkt. 24-3, Ex. 3). Furthermore, Mohamed admitted to regularly receiving mail at El-Rawsheh and that Ilbana was an employee there. (*See* Tr. 27, 30.) Nevertheless, Defendants do not provide a satisfactory explanation as to why Mohamed did not receive any of the notices related to this lawsuit, or why Defendants—including the Corporate Defendants, which do not contest service—failed to take action promptly after receiving notice that an order of default had been entered against them or at any earlier point. (*See* Dkt. 15-5, Affirmation of Service by Jeanne Mirer.)

In sum, given the Court's rejection of Defendants' conclusory denials about being served (in Mohamed's case) and/or being aware of this lawsuit,[15] as non-credible, the Court finds that Defendants knowingly failed to answer the Complaint and respond to the motion for default, thereby demonstrating willfulness for purposes of the *McNulty* analysis. *See Lopez v. Traffic Bar*

---

[15] Indeed, any claim by the Corporate Defendants that they were unaware of this lawsuit or the motions seeking a default order and judgment is contradicted by their admission that they were properly served. (*See* Tr. at 8.)

17

*& Restaurant Inc.*, No. 12-CV-8111, 2015 WL 545190, at *3 ("Of course, an opposing party may contest the representations set forth in an affidavit of service.  Here, the defendants have done so, but have provided no support for their conclusory statements."); *see also World Magic Int'l AVV v. Eddy Int'l Ltd.*, No. 09-CV-1447, 2010 WL 4457184, at *1 (S.D.N.Y. Nov. 1, 2010) (concluding that default was willful after holding an evidentiary hearing and finding that defendant was served with a summons and complaint and also finding defendant's affidavit denying that he was served not credible).

Mohamed's willful default can be further inferred from his delay in responding to the default judgment.  Default judgment was entered on November 26, 2014 (Dkt. 19), and Mohamed learned of this, at the latest, by December 22, 2014, when he filed a notice of appeal (Dkt. 20).  But then he did not pay the necessary filing fee for his appeal, and filed his motion to vacate the default judgment on February 20, 2015, two months after he had filed the notice of appeal.  (*See* Dkts. 19–22, 30.)  While Defendants are correct that a defendant who has defaulted is certainly free to pursue vacatur through legal representation, instead of through a *pro se* appeal, the delay with which Defendants have done so in this case, despite their receipt of the numerous notices regarding the lawsuit and the default proceedings, supports the Court's conclusion that Defendants knowingly chose to ignore the Summons and Complaint until well after a default judgment was entered.  Therefore, the Court concludes that Defendants' default was willful.[16]

---

[16] Indeed, based on the record in this case, the Court concludes that Defendants likely sought to bury their heads in the sand and hope that this lawsuit would disappear, only choosing to respond after it was clear that the lawsuit was not going away and that Defendants might actually have to pay money to Plaintiff.

### B.   Meritorious Defense

Because the "existence of a meritorious defense is a key factor in the Rule 60(b) analysis .

. . [the Second Circuit has] held that 'the absence of such a defense is sufficient to support [a]

district court's denial' of a Rule 60(b) motion."  *Green*, 420 F.3d at 109 (second alteration in

original) (quoting *State Street*, 374 F.3d at 174).  "In order to make a sufficient showing of a

meritorious defense[,] . . . the defendant need not establish his defense conclusively, but he must

present evidence of facts that, if proven at trial, would constitute a complete defense."  *Id.* (quoting

*McNulty*, 137 F.3d at 740).  A "'defendant must present more than conclusory denials when

attempting to show the existence of a meritorious defense.'"  *Id.* at 110 (noting that defendants

"failed to submit . . . even a single affidavit or any other evidence supporting their asserted

defenses" (quoting *Pecarsky v. Galaxiworld.com, Ltd.*, 249 F.3d 167, 173 (2d Cir. 2001); *see also*

*McLean*, 624 F. App'x at 45 (finding no meritorious defense because it was "made only in

conclusory terms and [was] not accompanied by any supporting evidence").  "'The test of such a

defense is measured not by whether there is a likelihood that it will carry the day, but whether the

evidence submitted, if proven at trial, would constitute a complete defense.'"  *Pecarsky*, 249 F.3d

at 173 (quoting *Enron Oil*, 10 F.3d at 98).

Here, while Defendants assert that Plaintiff worked for only two weeks and was paid in

full before he quit (Dkt. 34 at 8), they offer no support for these allegations other than Mohamed's

and Fanous's affidavits, and not, as the R&R notes, Plaintiff's time or pay records, even though

Defendants were required to keep such records under Section 211(c) of the FLSA  and New York

Labor Law.  (R&R at 18 (citing *Santillan v. Henao*, 822 F. Supp. 2d 284, 291 (E.D.N.Y. 2012),

N.Y. Lab. Law § 196-a, and *Padilla v. Manlapaz*, 643 F. Supp. 2d 302, 307 (E.D.N.Y. 2009)).)

Though the Court recognizes that other courts in this Circuit have found that such bare affidavits

may be sufficient to demonstrate the existence of a meritorious defense for purposes of a motion

to vacate a default or default judgment,[17] the Court declines to find so here.  Rather, based on the combination of Defendants' demonstrably false claims regarding service (and Mohamed's belated, false claim that he is not a manager, *see infra*), their willful delay in responding to this action, and their unsupported assertions of their purported defense (particularly when records supporting their defense should be readily available), the affidavits submitted by Defendants are entirely lacking credibility and thus are equivalent to *no* evidence at all.  Thus, the Court finds that Defendants have failed to sufficiently demonstrate that they have a meritorious defense.  *See McLean*, 624 F. App'x at 45 (finding no meritorious defense because it was "made only in conclusory terms and [was] not accompanied by any supporting evidence").[18]

    To the extent Mohamed attempts to argue that he should not have been named as a defendant because he had a minimal role in the operations of the current restaurant, this newly asserted allegation, which conspicuously comes *after* the traverse hearing, is not credible in light of Mohamed's and Fanous's earlier sworn statements discussing Mohamed's *managerial* role. (*Compare* Dkt. 34-1, September 21, 2016 Affidavit of Mohamed, ¶¶ 4–6, *with* Tr. 26 (Mohamed's testimony that he worked as a manager part-time) and Tr. at 38 (Fanous' testimony that Mohamed

---

[17] *See e.g.*, *Lopez*, 2015 WL 545190, at *5 (finding that defendants alleged sufficient facts to establish meritorious defense for purposes of motion to vacate default judgment, where all that was provided were sworn declarations asserting that plaintiffs were never employed by defendants and that all of defendants' employees were sufficiently paid); *Enron Oil*, 10 F.3d at 98 (finding a meritorious defense when defendants filed supporting affidavits); *see also Llolla v. Karen Gardens Apartment Corp.*, No. 12-CV-1356, 2016 WL 233665, at *4 (E.D.N.Y. Jan. 20, 2016) ("In the context of a motion to vacate a default, a defense that the parties were properly paid constitutes a 'meritorious defense.'" (alteration omitted) (quoting *Addison v. Reitman Blacktop, Inc.*, 272 F.R.D. 72, 81 (E.D.N.Y. 2010))).

[18] In the R&R, Judge Go similarly concluded that Defendants had failed to put forth a meritorious defense because they relied on general allegations that Plaintiff had worked for only two weeks and made false claims about his work, but failed to come forward with time records to support their general allegations.  (R&R at 18–19.)

was a manager at El-Rawsheh); *see also* Fanous Aff., ¶ 3 (stating that Mohamed is the "vice-president" of El-Rawsheh and that both Mohamed and Fanous manage the restaurant); Mohamed Aff., ¶ 3 (same).)  Therefore, the Court agrees with Judge Go (R&R at 19) that this newly asserted allegation is not credible and does not constitute a meritorious defense.

### C.   Prejudice

"In considering whether a plaintiff would be prejudiced if an entry of default were vacated, the court must take into account more than mere delay or passage of time."  *Lopez*, 2015 WL 545190, at *5 (citing *Davis v. Musler*, 713 F.2d 907, 916 (2d Cir. 1983)).  "Rather, it must be shown that the delay 'may thwart [the] plaintiff's recovery or remedy,' or 'result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion."  *Id.* (alteration in original) (quoting *Green*, 420 F.3d at 110).

Judge Go found the prejudice factor to weigh slightly in favor of Defendants because the delay between service of the Complaint and the filing of Defendants' motion to vacate was less than a year (R&R at 19), and Defendants do not object to that particular finding.  Nonetheless, this Court also considers whether vacating the default judgment will prejudice Plaintiff because one of the Corporate Defendants, specifically El-Rawsheh Cuisine Inc., filed a Chapter 7 Petition in the United States Bankruptcy Court immediately before filing their objections to the R&R.  (Dkt. 41.) While El-Rawsheh Cuisine Inc.'s financial situation is not entirely clear, because the corporate Defendant that employed Plaintiff is undergoing liquidation, Plaintiff's recovery is almost certain to be thwarted if judgment were to be vacated at this juncture.  *See Lopez*, 2015 WL 545190, at *5 (finding the prejudice factor to weigh against vacating the default judgment where defendant employer had closed and thus was no longer profitable and plaintiff had a reasonable concern that defendants "may be judgment-proof by the conclusion of the litigation"); *see also Gesualdi v. Quadrozzi Equipment Leasing Corp.*, 11-CV-115, 2016 WL 7322333, at *5 (E.D.N.Y. Dec. 15,

2016) (taking into account defendants' ongoing proceedings in bankruptcy court and finding that plaintiffs would be prejudiced if default judgment were vacated).  Moreover, because Plaintiff's employer is undergoing liquidation, and it has been more than three years since Plaintiff worked at El-Rawsheh, vacating the default judgment would result in further delay and the likely loss of evidence.  Accordingly, the Court finds that the prejudice factor weighs heavily against vacating the default judgment.

Because the Court finds that all three *McNulty* factors weigh against vacating default judgment, Defendants' motion to vacate pursuant to Rule 60(b)(1) should be denied.[19]  *See De Curtis*, 529 F. App'x at 86; *World Magic Intern. AVV v. Eddy Int'l Ltd.*, No. 09-CV-1447, 2010 WL 4457184, at *3 (S.D.N.Y. Nov. 1, 2010) (that defendant's default was willful reason enough to deny motion to vacate default judgment—"[n]egligent defaults may be excusable; *deliberate* defaults are not." (citing *Gucci Am., Inc. v. Gold Ctr. Jewelry*, 158 F.3d 631, 635 (2d Cir. 1998) and *In re Enron, Inc.*, 326 B.R. 46, 51 (Bankr. S.D.N.Y. 2005))).

## CONCLUSION

For the foregoing reasons, the Court adopts the recommendations and conclusions in the R&R, with the exception of Judge Go's finding as to whether vacatur is unlikely to prejudice Plaintiff, and denies Defendants' motion to vacate the default judgment.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: September 26, 2017
        Brooklyn, New York

---

[19] As to all other portions of the R&R to which Defendants have not raised objections, the Court finds no clear error and adopts those portions as well.